[No. 29980. Department Two. November 12, 1946.]

ISABEL HARVEY MURRAY, *Respondent*, v. A. W. MURRAY, *Appellant*.[1]

[1]Reported in 174 P. (2d) 296.

McClure & McClure, for appellant.

F. M. Reischling, for respondent.

STEINERT, J.—Plaintiff brought suit for divorce from the defendant on the grounds of mental cruelty and personal indignities rendering life burdensome, and in her complaint asked that all of the community property of the parties, together with her separate property, be awarded to her, that the defendant be required to pay her alimony in the sum of two hundred dollars a month, and that she be allowed the sum of five hundred dollars as an attorney's fee. Defendant cross-complained seeking a divorce upon similar grounds and upon the additional ground of alleged impotency of the plaintiff, and asked in his pleading that the court make a just and equitable division of the property. After trial of the cause, the court made findings of fact, drew conclusions of law, and entered an interlocutory order granting plaintiff a divorce, awarding to her almost all of the property, directing defendant to pay plaintiff alimony indefinitely in the sum of fifty dollars a month, and allowing her an attorney's fee of two hundred dollars and the costs of the action. Defendant appealed.

Respondent, Isabel Harvey Murray, and appellant, A. W. Murray, were united in marriage on October 20, 1928, and, except for a period of two or three weeks about six years ago, lived together, though unhappily, until October 20, 1945, at which time she was approximately forty-six years of age and he was approximately fifty. No children have been born to this union.

The parties are agreed that their differences are irreconcilable, and both were emphatic in their testimony that neither of them cared to longer live with the other. Appel-

lant's appraisal of the conditions which have continuously prevailed throughout the married life of the parties was expressed by him at the trial, as follows:

"BY THE COURT: Q. Do you think it is possible you and she could ever go back and live together? A. No. I tried it for seventeen years. Q. You don't want her back, then? A. No. Neither one of us would be happy. . . . [By Counsel] Q. I think you answered the Court's question as to whether or not you considered the differences between you and Mrs. Murray reconcilable. You consider them irreconcilable? A. In answering that I may say we separated about six years ago. I left her and was gone for two or three weeks and I thought at that time when we effected a reconciliation we might be able to reconcile and iron out our differences and we both agreed we would iron them out and did for a short time but then the situation became worse than it was before I left her the first time. Q. You separated the last time when you went out to Martha Lake to take care of your aged parents? A. Yes."

The respondent was no less positive in her assertions that the conditions were irreconcilable.

These unhappy relations culminated in a quarrel between the parties on October 20, 1945, which was their wedding anniversary. In consequence of this disruption, appellant left the home permanently, and shortly thereafter, on November 1, 1945, respondent instituted the present action.

In a bill of particulars supplementing her complaint, respondent alleged, as specific grounds for divorce, that appellant had given her only small sums of money with which to defray the household expenses and to purchase clothes for herself, despite the fact that he at such times was earning large sums of money; that appellant had been "so ugly, overbearing, and impolite" to her friends that it was impossible for her to have them in her home; that for a period of a year and a half he had threatened to divorce her and had told her that he cared more for his dogs than he did for her; that on their last wedding anniversary he had stated to her that the occasion meant absolutely nothing to him; that on numerous occasions he had humiliated her by his criticisms of her in the presence of her friends; and

that these acts and the personal indignities which he had heaped upon her had caused her to lose all love and affection for him.

In his cross-complaint, appellant alleged, as particular grounds for divorce, that for many years respondent had shown no love or affection for him; that she "constantly criticized, nagged, scolded, and abused him"; that she was possessed of a violent and ungovernable temper which she frequently visited upon him; that she spoke disparagingly of his mother; that she refused to accompany him when he took up his residence with his parents in order more properly to care for them; that respondent had repeatedly refused to accompany him on hunting and fishing trips; that she disliked children; that she had a great fear of pain but refused to consult physicians if she could possibly avoid doing so; that she declined to have anything to do with persons who were sick; and that she was "impotent" but would not seek competent medical advice upon the matter.

Needless to say, each of the parties denied the charges made by the other, although respondent did admit that she had reached that age which makes child bearing improbable.

Upon the trial, each of the parties produced five witnesses, including themselves, and the evidence tended to support, to a greater or a lesser extent, the charges which each had made against the other.

It would serve no useful purpose to set forth the evidence in detail. At the conclusion of the hearing, the trial judge rendered an oral decision in which he analyzed the evidence and concluded therefrom that the respondent had substantiated her charges of cruelty but that appellant had failed to sustain the allegations of his cross-complaint. Findings of fact, conclusions of law, and an interlocutory order in favor of the respondent were accordingly made and entered.

The appellant contends upon the appeal that the divorce should have been granted to him. We have carefully read and considered the entire record in the case and are unable to agree with appellant in that contention; at any rate, we are unable to say, from the record, that the evidence does not preponderate in favor of the respondent

upon the charges made by her, as well as upon the counter-charges made by appellant.

From what has thus far been related, it is apparent that neither party is claiming that no divorce at all should have been granted by the court. Both parties desire and seek that result, and the only question as to that phase of the case is whether the one or the other of them is entitled to the divorce. Since we agree with the trial court in its disposition of that issue, the interlocutory order will stand approved in that respect.

As may be surmised, the principal controversy in this case centers upon the property settlement and other awards made by the trial court, and we now address ourselves to those matters.

The trial court found, and, with the exception of one item, the parties are in agreement, that the community property consists of the following: (1) the family home in Seattle, the purchase price of which was $6,500; but which at the present inflated market prices could be sold for $13,750, subject to an existing mortgage of approximately $1,500; (2) household furniture and furnishings of the value of $2,000; (3) a 1929 Plymouth automobile worth approximately $75; (4) cash in bank amounting to $201; (5) United States war bonds of the value of $875; (6) a 1941 DeSoto automobile of the approximate value of $1,150; (7) an interest, valued at $500, in certain property located near Martha Lake, Washington, and (8) an unpaid profit of $500 arising out of a stock transaction. This last-mentioned item is disputed by the appellant, it being his contention that it amounts to only $479.03 and is part of an investment pool upon which he still owes the sum of $600.

In his first oral decision, the trial judge stated (1) that the respondent would be awarded the first five items of property above set forth, and that, in addition, appellant would be required to pay off the fifteen-hundred-dollar mortgage on the family home; and (2) that the appellant would be awarded the last three items of property above described. In that decision, the trial judge did not allow the respondent any alimony. Upon subsequent motion of

the respondent, a further hearing was held, and the court then stated that, in addition to the awards previously made to the respondent, she would be granted alimony in the sum of fifty dollars a month; this was to be for an indefinite period of time. The final oral decision of the court was incorporated in findings of fact and an interlocutory order dividing the property and granting monthly alimony for an indefinite period, as previously stated, and, in addition, allowing respondent an attorney's fee of two hundred dollars, together with her costs and disbursements.

The appellant submitted proposed findings, conclusions, and an interlocutory order which would make the same awards, except that respondent was not to be allowed any alimony, and that appellant should have a lien on the real property in the sum of five thousand dollars, as reimbursement for his payment of the mortgage thereon and as a return to him of a portion of his advancements in purchasing the home. These proposals by the appellant were denied by the court.

In its second oral decision, the trial court made this statement:

"Now, when you take only $16,000.00 of property and give it all to the wife upon the dissolution of the marriage, it does look bad. It looks like an unjust, inequitable division. But what is that? What is that property? Over $11,000.00 of it is a little bit of a house and lot, only a partial lot that you can't eat and you can't drink, and you can't live in it [without the] expense of taxes and repairs from time to time."

The court, however, at some length reviewed the entire evidence and gave its reasons for arriving at that result. We shall not attempt here to detail the evidence upon that issue, but will only set forth the facts as they appear to be fairly substantiated by the testimony of the parties.

At the time of the marriage, appellant was, and still is, a lawyer. At the same time, he was, and still is, superintendent of claims of a well-known insurance company in Seattle. Most of his time is devoted to his employment as such superintendent, although he does derive some appreciable income from the practice of law and from insurance

commissions. His regular salary from the insurance company amounts, and for a number of years has amounted, to four hundred dollars a month. His position with that company is reasonably assured, and he proposes also to continue as a practicing lawyer to a limited extent. In 1945, his total earnings amounted to approximately $6,500, and he is expectantly capable of earning, from all of his activities, not less than an average of six thousand dollars a year. Although having that earning power, appellant has a misplacement of the fifth lumbar vertebra, requiring him to wear a brace; he is also afflicted to some extent with arthritis in the upper region of his spine and has an infection of the prostate gland, requiring medical treatment.

The respondent wife had two years of university training prior to her marriage and is a graduate of an accredited business college, where she took a course in typewriting, shorthand, and bookkeeping. For six years prior to the time she met and married the appellant, she was employed as a stenographer by the Union Pacific Railway Company, and, prior to that, was employed about a year and a half by the University of Washington. Since her marriage, she has worked for periods of from one to three weeks in her former position with the railway company, and also, at one time, for a period of twenty months in a censorship position at a salary of one hundred fifty dollars a month. At present, she has some hesitancy in seeking a clerical position, because of her age and the fact that she has a back ailment which requires her to wear a brace.

Respondent's mother, aged seventy-six years, now lives with respondent, although the mother is not dependent upon the daughter for support. The residence in which they live, and which was awarded to the respondent by the court, consists of five rooms, of which two are bedrooms. The house is situated upon a forty-foot lot in the northerly part of Seattle. The court awarded the home residence and the household furniture and furnishings to the respondent because it was necessary for her to have some place in which to live, and, under the existing conditions, such award seemed the most feasible thing to do. The present

market value of the home, together with its furniture and furnishings, at the current inflated prices, accounts for $15,750 of the total value of all of the property awarded to her. The remainder consists of $201 cash, United States war bonds having a value of $875, and an old automobile worth $75.

Appellant did not seriously contend before the trial court that any of this property should be awarded to him, but, as his proposed findings, conclusions, and interlocutory order show, contended rather that respondent should not have been allowed any alimony, and, further, that he should have been given a lien on the real property in the sum of five thousand dollars, to compensate him for paying in due course the outstanding mortgage on the property and for a part of the advancements made by him in paying for the home. On his appeal, however, he takes the position, not only that there should be no award for alimony, but also that the home and its contents should be sold and the net proceeds of the sale divided equally between the parties.

■ Our statutes prescribe the guide for courts to follow in disposing of property in divorce cases. Rem. Rev. Stat., § 989 [P.P.C. § 23-23], provides, in part:

"In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the conditions in which they will be left by such divorce, and to the party through whom the property was acquired. . . ."

In the very nature of things, the rule cannot be more specific than as expressed by the statute. Each case must necessarily depend upon its own facts and circumstances.

■ Matters relative to the division of property in a divorce action rest largely in the discretion of the trial court, and its judgment will not be disturbed unless we as an appellate court can ascertain from the record and say that the trial court abused its discretion and made an unjust and inequitable division of the property. *Mapes v. Mapes,* 24 Wn. (2d) 743, 167 P. (2d) 405; *Beakley v. Beakley,* 25 Wn. (2d) 228, 170 P. (2d) 314.

█ Likewise, the matter of alimony is one which to a considerable extent lies within the discretion of the trial court. *Warning v. Warning*, 5 Wn. (2d) 398, 105 P. (2d) 715.

█ The criterion adopted by this court for the allowance of alimony includes two factors: (1) the necessities of the wife, and (2) the financial ability of the husband.' *Bartow v. Bartow*, 12 Wn. (2d) 408, 121 P. (2d) 962; *Duncan v. Duncan*, 25 Wn. (2d) 843, 172 P. (2d) 210.

█ Applying these rules to the case at bar, we are of the opinion that the trial court acted within its discretion in awarding the ownership, possession, and use of the residence, together with the furniture, furnishings, cash, war bonds, and the old automobile to the respondent. We differ, however, with the trial court upon two matters and are of the opinion that in those respects the division and award do not comply with the requirement of being just and equitable.

█ The first of these matters relates to alimony. We do not believe that respondent should, as indicated in the interlocutory order, receive alimony indefinitely. Appellant states in his brief that since the entry of the interlocutory order he has regularly paid the monthly alimony as provided therein. In making our decision on this point, we proceed upon the assumption that his statement is true.

Respondent is an able-bodied woman, has a good education and business training, and has had considerable business experience. We believe that she should be encouraged, as well as required, to seek employment in the field for which she is equipped, and we think that in these times she can, within a reasonable interval, obtain a desirable position. We therefore conclude that the monthly alimony payments should cease upon the expiration of six months after the date of filing of this opinion.

█ The other matter pertains to some further recognition to be given the appellant in return for his assuming and paying at maturity the mortgage on the home property and for his contributions to its acquisition. We realize that it is difficult to make an exact or an altogether satisfac-

tory award in that respect. But considering all the circumstances in the case, we think it just and equitable that respondent have the title to, possession, and use of the real property as long as she occupies the house or retains control of it, but that, if respondent should sell the real property or should predecease the appellant, then he should have a lien thereon to the extent and in the amount of one third of the net proceeds derived from the sale of the property.

The interlocutory order will be modified in the respects and to the extent above indicated, and in all other respects it will stand affirmed. Neither party will recover costs on the appeal.

SIMPSON, MALLERY, and CONNELLY, JJ., concur.

