[No. 42053.    En Banc.    February 24, 1972.]

JOHN M. FRIEDLANDER, *Respondent*, v. POLLY FRIEDLANDER, *Appellant*.

*Schroeter, Jackson, Goldmark & Bender,* by *John Goldmark,* for appellant.

*Sam L. Levinson* (of *Levinson & Friedman*), for respondent.

STAFFORD, J.—Mr. John M. Friedlander (hereafter called the plaintiff) instituted an action for divorce against his wife, Polly (hereafter called the defendant). Defendant also sought a divorce from plaintiff. Each was granted a

divorce. Defendant was awarded substantially all community property whereas plaintiff received his own separate property. Defendant appeals.

In 1955, defendant, a divorcee, began an affair with the plaintiff that lasted for approximately 5 years. Plaintiff's then wife became acutely aware of the situation and, after a bitterly contested action in 1960, dissolved a marriage of 27 years standing. Much of plaintiff's separate property, involved in this appeal, formed the subject of a similar appeal in *Friedlander v. Friedlander*, 58 Wn.2d 288, 362 P.2d 352 (1961).

Immediately following the divorce from Elizabeth, plaintiff and defendant discussed marriage. However, having just experienced one unpleasant dispute over property, plaintiff suggested that he and defendant enter into a prenuptial agreement.

Essentially, the agreement provided that separate property owned by either party prior to the contemplated marriage would remain separate property, together with all rents, issues and profits therefrom. It specifically mentioned that plaintiff's separate property consisted "principally of his holdings in the various Friedlander family enterprises and his contingent interest in the trust estate of Louis Friedlander, deceased." Defendant agreed, in the event of a divorce, to "make no claim in any proceedings for any of the separate property of John M. Friedlander, or the rents, issues and profits thereof." Although not specified in the prenuptial agreement, the "Friedlander family enterprises" in 1960 consisted of Friedlander and Sons, a corporation, which owned and operated a number of jewelry stores; LouBelle Realty Co., a corporation which owned land upon which the Logan Building was erected; P & J Wholesale Jewelers, a co-partnership; the Merton-Singerman Agency, a co-partnership; and the trust estate of Louis Friedlander, deceased.

The parties were married 2 days after signing the prenuptial agreement. At the time defendant had virtually no

separate property and she acquired none during the marriage.

The parties acquired a relatively small amount of community property. They lived on plaintiff's salary which ranged from approximately $26,000 in 1960 to about $47,000 in 1969. Plaintiff derived other income from profits of the various "Friedlander family enterprises" and from the investment in securities which were his separate property. No children were born during the marriage.

Defendant furthered her education during the ensuing years and completed all but two quarters for her fine arts degree. Unfortunately, the same period produced marital discord. Finally, each sought a divorce from the other claiming "cruel and inhuman treatment."

At the beginning of the marriage, the owners' interest in the various "Friedlander family enterprises" was valued at about $1,041,183, approximately one-third of which belonged to plaintiff. When the marriage was dissolved in 1970, the owners' equity had increased to approximately $1,297,243. Plaintiff's share therein had been substantially increased by the death of his mother.

The trial court granted each party a divorce. Plaintiff was awarded the community's interest in the profit sharing trust of Friedlander and Sons, Inc., and all of his separate property which the court listed as his interest in Friedlander and Sons, Inc.; LouBelle Realty; P & J Wholesale Jewelry; Merton-Singerman Agency; an interest in the Louis Friedlander trust; an inheritance from his mother; and, his interest in various life insurance policies that had been owned prior to the marriage. In short, plaintiff's share was essentially that provided for in the prenuptial agreement.

Defendant was awarded most of the community property, which consisted of the family home and household furnishings; four vacant lots; the proceeds of a savings account and an automobile, all of which had a net value of about $32,000. She was also awarded alimony of $500 a month for 3 years, together with costs and attorneys' fees.

Defendant appeals making 10 assignments of error which raise five basic issues.

## I

### THE HUSBAND'S ENTITLEMENT TO DIVORCE FOR MENTAL CRUELTY

Defendant asserts that she alone was entitled to a decree of divorce based upon cruel and inhuman treatment. The assignment of error is not well taken.

When two parties have sued for divorce on similar grounds, an appellant will not be heard to claim that the trial court erred by granting a divorce to the other spouse as well. *Akins v. Akins,* 51 Wn.2d 887, 322 P.2d 872 (1958). In such a case, error, if any, is not prejudicial.

## II

### THE ADEQUACY OF ALIMONY

Defendant asserts that prior to marriage she worked to support herself and child and lived in modest circumstances. In contrast, she contends, the marriage introduced her to a higher standard of living to which she has now become accustomed. She argues that she will be unable to maintain that standard. Thus, it is said, the trial court abused its discretion by granting her alimony of only $500 a month for 3 years.

While this is an engaging argument, it is not a proper basis for awarding alimony. *Morgan v. Morgan,* 59 Wn.2d 639, 369 P.2d 516 (1962). Alimony is not a matter of right. *Kelso v. Kelso,* 75 Wn.2d 24, 27, 448 P.2d 499 (1968). It is based upon *two* factors: (1) the necessities of the wife *and* (2) the financial ability of the husband to pay. *Kelso v. Kelso, supra; Murray v. Murray,* 26 Wn.2d 370, 378, 174 P.2d 296 (1946). The maintenance of a lifestyle to which one has become accustomed is not a test of *need. Morgan v. Morgan, supra.*

Further, defendant's child by a previous marriage is no

298

longer dependent upon her for support. Defendant is only 40 years of age. She assigns no error to the trial court's findings of fact that she is in good health; that she is within two quarters of completing her fine arts degree at the University of Washington; and that she is capable of earning her own living. The record also reveals that she is engaged in the commercial operation of an art gallery which, according to her brief, is "a business for which her education and abilities give her qualifications . . ." The indication is that the prospect for the business is good, although it may take some time to establish the gallery's name.

■ We cannot say that the trial court abused its discretion either in the amount or the duration of the alimony. Abuse of discretion is not shown unless the discretion has been exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable. *Malfait v. Malfait,* 54 Wn.2d 413, 341 P.2d 154 (1959); *High v. High,* 41 Wn.2d 811, 252 P.2d 272 (1953); *Berol v. Berol,* 37 Wn.2d 380, 223 P.2d 1055 (1950). *See also State ex rel. Beffa v. Superior Court,* 3 Wn.2d 184, 100 P.2d 6 (1940). Defendant has failed to demonstrate the requisite *need* for additional funds.

### III

#### THE PRENUPTIAL AGREEMENT

■ Both parties, as well as the trial court, have characterized the questioned instrument as a "prenuptial agreement." In citing *Hamlin v. Merlino,* 44 Wn.2d 851, 272 P.2d 125 (1954), each party has also referred to it as an "antenuptial" agreement. However, these two designations are synonymous and the parties have so treated them. 2 A. Lindey, Separation Agreements and Ante-Nuptial Contracts § 90, at 22-23 (rev. ed. 1967).

It is significant that the transaction involves a *prenuptial agreement* as distinguished from a *postnuptial or separation agreement* and that it has been so treated by the parties and the trial court as well. A prenuptial agreement is one entered into by prospective spouses *prior to marriage*

but in contemplation and in consideration thereof. By it, the property rights of one or both of the prospective spouses are determined or are secured to one or both of them or to their children. On the other hand, postnuptial agreements or settlements are made after marriage *between couples still married*. They take the form of (a) separation agreements; (b) property settlements in contemplation of a separation or divorce; (c) property settlements where there is no intention of the parties to separate. 2 A. Lindey, § 90, at 22-23; 1 W. Nelson, Divorce and Annulment § 13.02, at 485 (2d ed. 1945).

It is also important that although defendant challenges the validity of the prenuptial agreement, based upon the conditions that surrounded its making, neither party contends that prenuptial contracts, as such, are contrary to public policy, if freely and intelligently made. *Hamlin v. Merlino, supra;* 2 A. Lindey, § 90, at 30; *see also* 1 W. Nelson, § 13.03; 41 Am. Jur. 2d *Husband and Wife* § 283 (1968). Finally, neither party raises the question whether the prenuptial agreement was made in contemplation of or is promotive of divorce, and if so, whether it is void as against public policy for that reason.[1] Thus, there is no need to resolve either of the immediately preceding questions in this case. We are here concerned with whether the prenuptial agreement, assuming its proper use in this type of transaction, is valid as between these parties under the rules governing prenuptial agreements.

First, defendant argues that there was no considera-

[1] In this regard, *see* 2 A. Lindey, Separation Agreements and Ante-Nuptial Contracts § 90, at 73-74 (rev. ed. 1967) wherein it is pointed out that prenuptial contracts which permit parties to separate at any time, or are made in contemplation of divorce, or purport to limit a husband's liability for support in case of divorce, or are conducive of divorce are contrary to public policy and void. Arrangements suitable for a separation agreement cannot generally be incorporated in a prenuptial contract. *See also,* 1 W. Nelson, Divorce and Annulment §§ 13.03, 13.06, 13.22 (2d ed. 1945); 41 Am. Jur. 2d *Husband and Wife* § 279 (1968); Annot., 57 A.L.R.2d 942 (1958); Cathey, *Ante-Nuptial Agreements in Arkansas—A Drafter's Problem,* 24 Ark. L. Rev. 275, 287-88 (1970).

tion for the agreement because plaintiff had previously proposed marriage. This position, however, finds no support in the authorities. Marriage is not only adequate, but is consideration of the highest value. 2 A. Lindey, § 90, at 32-33; 41 Am. Jur. 2d *Husband and Wife* § 285, at 235 (1968); *In re Estate of Onstot,* 224 Iowa 520, 277 N.W. 563 (1938); *see also* 1 W. Nelson, § 13.03. Further, the agreement contained mutual waivers by the parties. This also is adequate consideration for a prenuptial agreement. 2 A. Lindey, § 90, at 34; 41 Am. Jur. 2d *Husband and Wife* § 285, at 235 (1968).

Next, defendant contends the trial court erred by finding: ". . . *Polly Friedlander has not sustained the burden of proving* that the [prenuptial] agreement was not executed in good faith . . ." (Italics ours.) The finding of fact was proposed by plaintiff's attorney. However, during oral argument he conceded that it incorrectly shifted, to defendant, the burden of proving the prenuptial agreement was not executed in good faith.

Obviously, counsel's concession has placed the trial court in an awkward position. Nevertheless, it comports with the law relative to prenuptial agreements. Generally speaking, the burden of establishing full disclosure or fairness rests upon the party asserting the prenuptial agreement (*i.e.,* the plaintiff husband herein). 2 A. Lindey, § 90, at 38 and 85; 41 Am. Jur. 2d *Husband and Wife* § 313, at 254 (1968). As stated in 2 A. Lindey, § 90, at 84:

> where the provision made for the wife is disproportionate to the property of the husband, a presumption arises that the contract was procured by deliberate concealment of the amount and value of the husband's property; and the husband or those claiming under him against the wife have the burden of showing that she had full knowledge of the value of her interest in the husband's property, or that the circumstances were such that she reasonably should have had such knowledge.[2]

---

[2]See also *Hamlin v. Merlino,* 44 Wn.2d 851, 865, 272 P.2d 125 (1954); *Hartz v. Hartz,* 248 Md. 47, 234 A.2d 865 (1967); *Kosik v. George,* 253 Ore. 15, 452 P.2d 560 (1969); *Warner v. Warner,* 235 Ill. 448, 85 N.E. 630 (1908); 2 A. Lindey, § 90, at 238 (Supp. 1971); 41 Am. Jur. 2d *Husband and Wife* § 314 (1968).

The trial court erred by finding that defendant had the burden of proving the agreement was not executed in good faith.

A prenuptial agreement freely and intelligently made is generally regarded as conducive to marital tranquility and the avoidance of disputes about property in the future. 2 A. Lindey, § 90, at 30. For that reason, it is regarded with favor. But, the beneficial possibilities of such contracts must be preserved without the attendant dangers of abuse.

With this in mind the relationship of the parties to the contract becomes of primary importance. It is well recognized that even an engagement to marry creates a confidential relationship. *Hamlin v. Merlino*, 44 Wn.2d 851, 865, 272 P.2d 125 (1954); *Juhasz v. Juhasz*, 134 Ohio St. 257, 264, 16 N.E.2d 328, 117 A.L.R. 993 (1938). Parties to a prenuptial agreement do not deal with each other at arm's length. Their relationship is one of mutual confidence and trust which calls for the exercise of good faith, candor and sincerity in all matters bearing upon the proposed agreement. *Bauer v. Bauer*, 1 Ore. App. 504, 464 P.2d 710 (1970); 2 A. Lindey, § 90, at 38, 41.

The basic objective of this common sense rule is to prevent overreaching. 2 A. Lindey, § 90, at 240 (Supp. 1971). Where a prenuptial contract makes provision for a wife that is disproportionate to the means of the intended husband, it casts a burden upon the intended husband, and those claiming under him, to prove that she had full knowledge of all the facts and circumstances that materially affected the contract. *Juhasz v. Juhasz, supra; Warner v. Warner*, 235 Ill. 448, 462, 85 N.E. 630 (1908).

Without question, the record in this case discloses that the prenuptial contract makes provision for the wife that is disproportionate to the means of the husband.

Plaintiff acknowledges that the establishment of good faith and full disclosure is his burden. However, he asserts that he has sustained it. He argues that he told defendant he had had many difficulties during the first divorce that he

did not want to encounter again. Plaintiff asserts that the agreement itself discloses the nature of the assets by referring to "property and assets, consisting primarily of his holdings in the various Friedlander family enterprises and his contingent interest in the trust estate of Louis Friedlander, deceased." It is related that both Mr. Monheimer, an attorney for plaintiff and for the Friedlander family, and plaintiff's brother, Paul (also an attorney), informed defendant generally of the nature and effect of a prenuptial agreement. Plaintiff indicated that defendant signed the agreement without objection, knowing that it involved property consisting of jewelry stores and the Logan Building realty.

It must be observed, however, that the statement of facts fails to reveal the content of any explanation made by Mr. Monheimer or Mr. Paul Friedlander. In fact, neither could have explained the substance of the actual agreement. At the time, it had not been drafted by Mr. Friedman, another of plaintiff's attorneys. There is no evidence that defendant had anyone explain the contents of the written agreement to her. Finally, there is no evidence that anyone discussed with her the value of the property with which the prenuptial agreement was concerned.

This brings us to the nature of the good faith disclosure required by a prenuptial agreement. To render such an agreement valid there must be a fair and reasonable provision for the wife, or, in the absence thereof there must be a full, frank disclosure of the future husband's property and his worth. *Juhasz v. Juhasz, supra; Warner v. Warner, supra;* 2 A. Lindey, § 90, at 36-37. This is not to say that she must know the *exact* financial status of his resources. However, she must at least have a full and fair disclosure of all material facts relating to the amount, character and value of the property involved so that she will not be prejudiced by the lack of information, but can intelligently determine whether she desires to enter the prenuptial contract. *Juhasz v. Juhasz, supra; Warner v. Warner, supra;* 2 A. Lindey, § 90, at 44; 41 Am. Jur. 2d *Husband and Wife* §§ 313-14

(1968). Viewed in the light of this test, we hold that plaintiff failed to sustain his burden of proof.

Further, the prospective spouse must sign the agreement freely and voluntarily on *independent advice* with full knowledge of her rights. *Hamlin v. Merlino, supra* at 864; 2 A. Lindey, § 90, at 36-38. It is clear that defendant did not have such advice prior to signing the agreement. All advice was provided by the plaintiff, his brother, Paul, and Mr. Monheimer. The prenuptial contract was even prepared by another of plaintiff's attorneys.

The prenuptial agreement was void in its inception.

Plaintiff contends that the trial court's error did not affect the distribution of property and, thus, is not fatal to the result. He argues that, contrary to defendant's assertion, the trial court did not distribute the property pursuant to the prenuptial agreement, but relied instead upon RCW 26.08.110.

We disagree. RCW 26.08.110 provides that *all* property, *both community and separate,* shall be before the court for such distribution as may be *just and equitable.* Nevertheless, distribution in the instant case was virtually the same as that provided for in the prenuptial agreement and was overly disproportionate.

We agree with defendant, that the trial court treated the prenuptial agreement as binding upon the parties. The trial court's oral opinion reflects its reliance on that contractual relationship by stating "we have to accept the agreement as it stands". This coincides with finding of fact 12 in which the trial court found that she was bound by the agreement. The finding of fact was more than a mere statement that defendant was bound by a failure of proof. It was a finding that her rights in the distribution of property were governed by the prenuptial agreement.

The trial court erred by distributing the assets pursuant to a void prenuptial agreement.

## IV

### THE DETERMINATION OF COMMUNITY AND SEPARATE PROPERTY

Defendant argues that the trial court incorrectly classified virtually all assets as plaintiff's separate property. She asserts further that there was a commingling of plaintiff's separate property with community assets and that the court should have imposed a lien upon the plaintiff's separate property in behalf of the community.

Finding of fact 5 designates the plaintiff's separate property and declares that it was identifiable, separately maintained and not commingled with community property. Although there is some conflict in the testimony, careful review of the record reveals substantial evidence to support the finding of fact. A trial court's finding of fact must be accepted as a verity where there is substantial evidence to support it. *Friedlander v. Friedlander*, 58 Wn.2d 288, 362 P.2d 352 (1961).

Similarly, conclusion of law 6 must be upheld. It is adequately supported by findings of fact 4 and 5. *State v. Russell*, 73 Wn.2d 903, 910, 442 P.2d 988 (1968); *York v. Cooper*, 60 Wn.2d 283, 286, 373 P.2d 493 (1962).

## V

### THE DIVISION OF SEPARATE AND COMMUNITY ASSETS

Although the trial court placed no specific value on plaintiff's separate property, the record is clear that he received a disproportionate share of the total assets. Plaintiff attempts to justify this on the ground that in a divorce action the distribution of property made by a trial court may be overturned only for manifest abuse of discretion, citing *Friedlander v. Friedlander, supra*. While the statement of the rule is correct, it is not applicable here.

The trial court did not exercise its discretion by distributing property pursuant to RCW 26.08.110. The disproportionate distribution was made because the trial court as-

sumed it was bound by the void prenuptial contract. In short, it is the distribution pursuant to a void contract that is under attack and not the trial court's power to distribute property pursuant to statutory discretion.

It was argued orally, and suggested in plaintiff's brief, that in the final analysis distribution by the prenuptial contract essentially followed the law. We disagree. Granted, it followed that portion of RCW 26.08.110 which provides that the trial court shall consider "the party through whom the property was acquired". This, however, is only one portion of the statutory requirements.

In an action for divorce *all property,* both community and separate, is before the trial court for distribution. *Patrick v. Patrick,* 43 Wn.2d 139, 260 P.2d 878 (1953). Its characterization as community, or separate, though significant, is not necessarily controlling. *Huff v. Huff,* 68 Wn.2d 501, 413 P.2d 818 (1966). RCW 26.08.110 requires a *just and equitable distribution* of the property. This does not entail an equal division thereof. *Ovens v. Ovens,* 61 Wn.2d 6, 376 P.2d 839 (1962). Where children are not involved, RCW 26.08.110 requires that the trial court consider the following matters in achieving a just and equitable distribution: (1) the respective merits of the parties; (2) the condition in which they will be left by such divorce; and (3) the party through whom the property was acquired.

We have held that the trial court should also consider other factors. First, the court must consider the necessities of the wife and the financial ability of the husband. Then, it should take into account the age of the parties, their health, physical condition, education, their employment history. *DeRuwe v. DeRuwe,* 72 Wn.2d 404, 408, 433 P.2d 209 (1967). It should likewise consider their training and business or occupation experience (*Stacy v. Stacy,* 68 Wn.2d 573, 414 P.2d 791 (1966)), as well as their future earning prospects. *DeRuwe v. DeRuwe, supra.* The court should give regard to the date the parties accumulated the property, the party through whom it was acquired, the kinds of property involved (*DeRuwe v. De-*

*Ruwe, supra*), as well as the value of the parties' respective contribution to the community. *See VanKleffens v. Van-Kleffens,* 150 Wash. 685, 274 P. 708 (1929). Even when regard is had for the fault of the parties[3] and the wrong inflicted by one upon the other, the economic condition in which the decree will leave them remains the paramount concern in making a division of the property. *DeRuwe v. DeRuwe, supra.*

The cause is remanded for the trial court to make a just and equitable division of the property of the parties in light of the foregoing guidelines and without regard to the void prenuptial agreement.

To insure an equitable distribution, it will be necessary for the trial court to make a valuation of all properties, whether community or separate.

The judgment is affirmed in part and reversed in part.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, and WRIGHT, JJ., concur.

---

[3]For the consideration that should be given fault in the matter of distribution *see Bryant v. Bryant,* 68 Wn.2d 97, 411 P.2d 428 (1966) and *Myers v. Myers,* 21 Wn.2d 19, 23, 149 P.2d 926 (1944).