IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | |
| | ) | No. 32594-6-III |
| SHEILA CLAIRE JEWETT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| ROBERT HENRY JEWETT, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — Sheila Wilson, formerly Sheila Jewett, appeals from the trial court's distribution of property in conjunction with the dissolution of her marriage to Robert Jewett. Discerning no abuse of discretion, we affirm.

## FACTS

The couple married in 2000; 13 years later Ms. Wilson petitioned to dissolve the relationship. Both parties worked at multiple jobs during the marriage. When they first met and after they began living together, Ms. Wilson was working at Costco and Mr. Jewett was trying to build a rock crushing, sand, and gravel business. Ms. Wilson continued to work at Costco until around the year 2000 when she suffered a work-related injury. Mr. Jewett formed a rock crushing company with his father called Jewett

Crushing in 1997. Both Mr. Jewett and Ms. Wilson were involved in the day-to-day operations of that business until it failed in 2008. Throughout that time and afterward, Ms. Wilson worked as a legal office assistant for three-and-a-half years, sparingly as a grocery store cashier, and as a realtor for nine years. Her Washington real estate license had lapsed at the time of trial, but she was still licensed in Idaho. During the marriage, Ms. Wilson also ran an espresso stand that the couple purchased and eventually sold under an installment contract for $400 a month for a total of $25,000. At the time of trial, she was unemployed and listed the proceeds from the sale as her only income.

After 2008, Mr. Jewett worked as a millwright at Clearwater Paper until he was fired in 2011. He then worked for a logging company hauling chips until he got a job in North Dakota for Jeff Port Construction. The job in North Dakota was the last one he reported prior to the dissolution. He listed an income of $7,000 a month from Jeff Port Construction. At the time of the trial, however, he was unemployed and not seeking work due to depression related to his father's passing and the dissolution.

In 2005, the couple moved into a manufactured home on thirteen acres that was gifted to them by Mr. Jewett's father. They then used the property and home as collateral to borrow $300,000. In 2010, they lost the property through foreclosure. Mr. Jewett is currently living on his late father's property. Ms. Wilson is still living in the foreclosed home, but was in the process of moving to Spokane at the time of the trial.

2

As a result of their lifestyle, the couple had extensive debts amounting to almost $250,000 at the end of the marriage. They had nearly $60,000 worth of assets comprised mostly of personal property, and some remaining interest in the two failed business ventures.

The trial court concluded that neither Mr. Jewett nor Ms. Wilson were "particularly credible." In an effort to help the parties move past their anger, the trial court attempted to divide the couple's assets in a manner that would limit contact between them. To that end, the trial court divided the two business ventures, giving Mr. Jewett the interest in Jewett Crushing[1] and Ms. Wilson the remaining installments from the sale of the espresso stand as their respective separate properties. The court then awarded each party the personal property in his and her possession at the time of the dissolution. The court declined to grant maintenance to Ms. Wilson. Finally, to reach an equitable result in light of Mr. Jewett's higher earning potential and separate property, the court shifted 100 percent of the couple's debts to Mr. Jewett and 80 percent of the community property to Ms. Wilson, leaving her unencumbered and therefore more capable of standing on her own. The court also declined to award attorney fees to Ms. Wilson, reasoning that she had the ability to pay her own counsel.

---

[1] Mr. Jewett also was required to indemnify Ms. Wilson against any claims by the partnership against the community for using partnership accounts for community expenses while married and for Ms. Wilson selling some of the assets prior to trial. Presumably this requirement would chill any effort by Mr. Jewett to sue on behalf of the partnership.

3

Findings in support of the property division and decree of dissolution were entered. Ms. Wilson then timely appealed to this court.

## ANALYSIS

In this appeal, Ms. Wilson challenges four of the court's factual findings, the property division, and the decision not to award maintenance. She also requests attorney fees on appeal. We address those four issues in the order listed.

*Factual Findings*

Although stated as challenges to the evidence supporting the findings, many of Ms. Wilson's challenges are substantively legal in nature. This court reviews challenges to factual findings for substantial evidence. *Clark v. Clark*, 72 Wn.2d 487, 492, 433 P.2d 687 (1967). Substantial evidence exists if the evidence is sufficient to persuade a fair-minded rational person of the truth of the evidence. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Appellate courts do not find facts and cannot substitute their view of the facts in the record for those of the trial judge. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959). Thus, credibility determinations are peculiarly matters for the trier-of-fact and may not be second-guessed by an appellate court. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Unchallenged findings are verities on appeal. *Jones*, 152 Wn.2d at 8.

Ms. Wilson first challenges Finding 2.8 that declares that the property set forth in Appendix A to the findings is all of the community property of the parties. She argues

4

that this finding founders on the basis of her unchallenged testimony that Mr. Jewett had taken community property with him to North Dakota that was unaccounted for in the listing.

There are several problems with this argument. First, as noted earlier, the trial judge found neither party particularly credible. A court is not required to accept testimony that is undisputed. *J.S. Brown & Bros. Mercantile Co. v. Sherrod*, 53 Wash. 132, 133, 101 P. 481 (1909). Moreover, the testimony never pointed to specific items of property that supposedly had been taken nor did it assign value to any of the missing property despite the fact that the property division was the most hotly contested issue at trial. The trial court had no basis for finding that some other, unspecified property belonging to the community existed. The trial court also had no duty to dispose of property that was not brought to its attention. *Little v. Little*, 96 Wn.2d 183, 190, 634 P.2d 498 (1981). For all of these reasons, the challenge to Finding 2.8 fails.

Ms. Wilson next challenges Finding 2.9 that Mr. Jewett had a separate property interest in Jewett Crushing. This challenge largely is legal in nature. She contends that the assets of Jewett Crushing, primarily some trucks and similar heavy equipment, were acquired during the marriage and, hence, were community assets. In its oral remarks, the trial court found that Mr. Jewett and his father, Tim Jewett, had formed a 50-50 partnership in 1997 prior to Mr. Jewett's marriage to Ms. Wilson. The court noted that Tim Jewett over the years had put in most of the cash for the partnership, thus raising his

5

ownership interest to 90 percent, a fact recognized in later tax returns. The court also noted that Robert Jewett's work for the partnership during the marriage had created a community interest in the partnership. Nonetheless, the court characterized the property both as Robert Jewett's separate property and as community property before assigning the business debts and liabilities to Mr. Jewett to account for the community's interest.

The characterization as separate property was correct. The partnership had been created before the marriage, thus making Robert Jewett's share of that partnership his separate property. RCW 26.16.010. Similarly, any interest inherited by Robert Jewett from his father likewise was separate property. *Id.* Assets acquired by the partnership did not thereby become assets of the Wilson-Jewett marital community. The efforts of the marital community towards the partnership may (or may not) have created a lien or right to reimbursement by the partnership in favor of the community, but those efforts did not change the nature of the partnership or convert its assets to community assets.

The trial court's characterization of Jewett Crushing as Robert Jewett's separate property is supported by substantial evidence. There was no error.

Ms. Wilson next challenges Finding 2.10 that the community's liabilities were as listed in Appendix A. Her primary concern is that no deficiency judgement related to the foreclosure had been entered against the community and there was no evidence that tax warrants remained outstanding because Robert Jewett had testified that the warrants had been paid.

This argument is a technical one of no import. The judgment entered against the property recognized the in rem nature of the judgment, permitted a deficiency judgment, and also recognized a then-current obligation of about $482,000 against the $300,000 deed of trust. Ex. 126. This document suggested that a deficiency in the neighborhood of $182,000 would be owing. Whether a judgment would be pursued is a different proposition than who would bear the responsibility between the couple for the liability.[2]

Similarly, the assignment of the tax debts to Mr. Jewett was proper even if he had already paid them. The *obligation* was assigned to him by the property distribution order. It was not an accounting of then-current debts. Whether he had met his obligation also was a different question than the one the trial court was answering. There was no error.

Finally, Ms. Wilson also challenges Finding 2.12 that states, in relevant part, that maintenance "should not be ordered because the Respondent was awarded all of the community liabilities and the Petitioner has the ability to support herself." This, too, is largely a legal challenge to the maintenance ruling, a topic that will be discussed later in this opinion. To the extent it is a factual challenge to the finding, the evidence supports the finding.

---

[2] The actual figure assigned to the deficiency ($184,139.75) was attributed to exhibit 127, an exhibit that was not admitted at trial. Clerk's Papers at 102. Whether this was error or whether the court changed its mind in admitting the contents of the exhibit is a question we need not pursue since the figure was close enough to the known deficiency that it had little impact on the distribution.

7

The identified community liabilities were all awarded to the husband.[3] That aspect is clearly supported by the record. The record also reflects that Ms. Wilson had been employed in the past, including the period after an injury made her unable to work for Costco, and there was no impediment to her working again. In short, the finding that she had the ability to support herself likewise was supported by substantial evidence.

The four challenged findings are supported by the record.

*Property Division*

Ms. Wilson also substantively challenges the property division even though she received 80 percent of the community assets and none of the liabilities, contending that the trial court did not adequately consider the statutory factors. The trial court did not abuse its discretion.

RCW 26.09.080 requires the trial court to make a "just and equitable" distribution of the parties' properties and liabilities. The statute mandates the judge consider all relevant factors, including the length of the marriage, the nature and extent of both community and separate property, and the respective economic circumstances of the parties at the time of the award.

---

[3] Ms. Wilson also argues that she agreed to pay her own tax liabilities for 2011 and 2012, but the Appendix does not reflect that obligation. However, the trial judge never made any finding about her tax liabilities and did not award them to anyone, so the absence of a finding does not render erroneous the characterization of the debts as entirely Mr. Jewett's. Ms. Wilson (understandably) does not assign error to the absence of findings on this point and we, thus, are not in a position to consider it further.

8

As Ms. Wilson readily acknowledges, this court reviews a property division award for abuse of discretion. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Id.* The trial court is "in the best position to assess the assets and liabilities of the parties" and to determine what constitutes an equitable outcome. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999). Fairness under the circumstances is required rather than mathematical precision. *In re Marriage of Larson & Calhoun*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013), *review denied*, 180 Wn.2d 1011 (2014).

Here, Ms. Wilson contends that the trial judge was primarily focused on separating the two permanently rather than applying the statutory considerations. We disagree. While part of the court's motivation was to limit contact between the couple, that fact does not mean that the court ignored its statutory obligations. The court heard detailed testimony at great length on the value of the various items of property, including the disputed partnership assets, and heard argument from both sides concerning the statutory factors. The problem was that the each spouse, as Mr. Jewett's counsel argued, was a spendthrift and the couple had little in the way of either community or separate property assets to divide since the two used their income as well as inheritances and gifts from family to live on during the marriage. The court resolved the disputed valuations largely in Mr. Jewett's favor and Ms. Wilson was not able to prove that unaccounted valuable

9

assets still existed. Even at that, Ms. Wilson was awarded some of the partnership assets while Mr. Jewett was awarded all of the substantial debt.

The court correctly assessed the situation. While Mr. Jewett had a greater earning potential, he was assigned all of the significant community debt since he was the only one who might have the ability to pay it, and he also would assume any liabilities facing the partnership. While Ms. Wilson had the lesser earning capacity, she was given the bulk of the assets free of any encumbrances in order to start anew. These were very tenable grounds for decision.

Accordingly, we cannot conclude that the court abused its discretion in making the property award.

*Maintenance Request*

Ms. Wilson also challenges the court's decision to deny her request for 12 to 18 months of spousal maintenance while she found work. As with the property division, there was no abuse of discretion.

A request for maintenance is controlled by RCW 26.09.090. Its non-exclusive list of factors to be considered includes:

> (a)   The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently . . . ;
>
> (b)   The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage . . . ;

(d) The duration of the marriage . . . ;

(e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

The purpose of maintenance is to support a spouse until he or she is able to become self-supporting. *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). There is no right to spousal maintenance in Washington, but the denial of maintenance is reviewed for abuse of discretion. *Friedlander v. Friedlander*, 80 Wn.2d 293, 297-298, 494 P.2d 208 (1972). Trial courts must consider the statutory factors of RCW 26.09.090. *In re Marriage of Williams*, 84 Wn. App. 263, 267-268, 927 P.2d 679 (1996). However, findings regarding the statutory factors are not necessary as long as it is clear that the court considered them. *Mansour v. Mansour*, 126 Wn. App. 1, 16, 106 P.3d 768 (2004).

Here, the record reflects that the court did consider the statutory factors. Not only were they argued by counsel, the court noted some of them in its oral remarks. The trial court made the following paraphrased findings in its oral ruling: (1) Ms. Wilson has the ability to support herself; (2) during the marriage, the couple lived beyond their means. Report of Proceedings (RP) 477, 489. The court also mentioned its duty to consider the following facts: (3) the length of the marriage, (4) the age of the parties, and (5) the

11

separate property apportioned to Mr. Jewett. RP at 474, 475, 482. Accordingly, the record reflects that the trial court fairly considered the statutory factors.

The trial court also had tenable reasons for denying maintenance. Ms. Wilson did not need maintenance to allow her to learn a new trade as she generally had been employed before and during the marriage. She could support herself. While the trial court must consider the standard of living established during the marriage, it is not required to maintain that standard postdissolution.[4] Similarly, the fact that one spouse's income is significantly greater than the other spouse's income does not necessarily mandate an award of maintenance. *See, e.g., In re Marriage of Foley*, 84 Wn. App. 839, 930 P.2d 929 (1997) (denying husband maintenance where wife earned $2,648 monthly and husband earned $1,350 monthly); *In re Marriage of Wright*, 78 Wn. App. 230, 896 P.2d 735 (1995) (denying wife spousal maintenance where husband's monthly income was $4,950 and wife's was $1,400); *Luckey*, 73 Wn. App. at 204-205 (denying spousal maintenance to wife where husband earned $85,000 annually and wife earned $18,000 annually).

Again, the trial court had tenable grounds for its decision. Ms. Wilson was not a person who needed maintenance to transition to new employment, nor did the other

---

[4] "The maintenance of a lifestyle to which one has become accustomed is not a test of *need.*" *Friedlander*, 80 Wn.2d at 297.

12

statutory factors suggest maintenance was appropriate. The trial court did not abuse its

considerable discretion.

*Attorney Fees*

Ms. Wilson also seeks attorney fees for this appeal. We exercise our discretion to

decline the request.

RCW 26.09.140 permits both the trial and appellate courts, in their discretion, to

award fees largely in accordance with need and the other side's ability to pay. It provides

in relevant part:

> The court from time to time after considering the financial resources
> of both parties may order a party to pay a reasonable amount for the cost to
> the other party of maintaining or defending any proceeding under this
> chapter and for reasonable attorneys' fees or other professional fees in
> connection therewith, including sums for legal services rendered and costs
> incurred prior to the commencement of the proceeding or enforcement or
> modification proceedings after entry of judgment.
> Upon any appeal, the appellate court may, in its discretion, order a
> party to pay for the cost to the other party of maintaining the appeal and
> attorneys' fees in addition to statutory costs.

The key word in the statute for the purposes of this appeal is *may*. Parties are not

entitled to fees as a matter of right. *In re Marriage of Harrington*, 85 Wn. App. 613,

635-636, 935 P.2d 1357 (1997). Decisions whether to award fees under this statute are

reviewed for abuse of discretion. *See In re Marriage of Nelson*, 62 Wn. App. 515, 521,

814 P.2d 1208 (1991).

13

No. 32594-6-III
*In re the Marriage of Jewett*

As noted previously, the trial court concluded that Ms. Wilson had the ability to pay her own attorney fees. Although Mr. Jewett undoubtedly has a greater ability to pay than Ms. Wilson does, that fact does not alone require that we award fees to Ms. Wilson in light of her own ability to pay counsel. Accordingly, we decline to award attorney fees in this court.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Brown, A.C.J.

Fearing, J.

14