# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of

ANN MARIE JOHNSON,

             Respondent,

and

DON ANTHONY JOHNSON,

             Appellant.

No. 76934-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 16, 2018

APPELWICK, J. — Don Johnson appeals from the property distribution following entry of a dissolution decree. He argues that the trial court made several computational errors and that the findings of fact are insufficient for appellate review. We agree. We remand for correction of the computational errors and the entry of specific findings that explain the basis for the court's property division.

## FACTS

Don and Ann Johnson married in 1998 and separated in December 2015. At the time of the dissolution trial in January 2017, Ann was 53 years old, and Don was 58. The couple have one child.

Ann worked as a nurse until 2012, with a monthly income of about $5,000. Don, a machinist at Boeing, was earning about $8,000 monthly when he retired in December 2015.

During the course of the dissolution trial, the parties agreed to a final parenting plan, leaving only property division and maintenance issues for resolution.

The parties' primary assets were four parcels of real estate and several retirement and investment accounts.

Both Ann and Don owned real estate at the time of the marriage. Ann had purchased a cabin in Ronald, Washington (Ronald cabin), with a down payment of $50,000. Don had purchased a house on Marine View Drive on Whidbey Island with a $5,300 down payment (rental house). During the marriage, the parties paid off the mortgages on both properties using community funds.

In 2003, Don and Ann purchased a second house on Marine View Drive with a $60,000 down payment (family home). The new house became the couple's family home, and they rented out the other Marine View Drive house. At the time of trial, the outstanding mortgage on the family home was $160,000. At about the same time, the parties purchased the vacant lot across the street from the family home for $60,000 (Lagoon Point lot). Don planned to use the lot for his hobby of restoring and repairing vehicles.

The parties purchased a Ford F350 truck for $34,000 in cash, $27,000 of which was a gift to Ann from her father. The parties also owned numerous other collectible vehicles associated with Don's hobby. The value and division of those vehicles is not disputed.

Both Don and Ann had existing pension accounts at the time of the marriage. Don had a Boeing pension plan and a Boeing 401(k) account. Ann had a Fidelity Investments 401(k) account through Northwest Hospital and an investment account with Edward Jones.

At the time of trial, Ann was no longer able to work as a nurse and had a monthly income of about $1,667. Following retirement, Don's monthly income was $3,148. The court found that although Ann faced significant health issues and had shown a need for maintenance, Don did not have the ability to pay. The court's denial of maintenance is unchallenged on appeal.

The court found the parties had total assets worth about $3.2 million. The court awarded Don about $1.1 million in property and Ann about $2.1 million in property, a division of about 36 percent to Don and 64 percent to Ann.

The court found that all of the real estate was community property and awarded the Ronald cabin (valued at $169,000) and the Lagoon Point lot ($52,000) to Ann and the rental house ($250,000) and family home ($400,000 less $160,000 mortgage) to Don. The court awarded the Ford F350 truck ($24,995) as community property to Don.

The court also identified "separate property interests" for the real property and the Ford F350 truck, based on the source of funds for the purchase. The court calculated a net separate property interest of $131,700 in Ann's favor and ordered Don to reimburse her for this amount.[1]

The court awarded Don $1,036,032 in community property and awarded Ann $554,299. To equalize the total community property award, the court ordered Don to pay Ann $240,866. After adding the $131,700 separate property reimbursement, the

---

[1] The court used a similar method when distributing the parties' pension and investment accounts.

court entered a total judgment for $372,566 in Ann's favor, to be paid in full within six months, including 12 percent interest.

Don appeals.

## DISCUSSION

I. Property Distribution

Don contends that the trial court failed to enter sufficient findings of fact to support the property distribution. He argues that the absence of adequate findings, coupled with computational and other alleged errors, precludes meaningful review of whether the property division was fair and equitable.

In a dissolution proceeding, the trial court must make a "just and equitable" division of the parties' property and liabilities after considering "all relevant factors," including the nature and extent of the community and separate properties, the duration of the marriage, and the economic circumstances of the parties at the time of the dissolution. RCW 26.09.080(1)-(4).

A just and equitable distribution of property " 'does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of the parties.' " In re Marriage of Zahm, 138 Wn.2d 213, 218-19, 978 P.2d 498 (1999) (quoting In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996)). All of the parties' property, both separate and community, is before the court for distribution. Friedlander v. Friedlander, 80 Wn.2d 293, 305, 494 P.2d 208 (1972). Consequently, an error in characterizing property does not warrant reversal if the

overall property distribution is otherwise fair and equitable. In re Marriage of Brady, 50 Wn. App. 728, 732, 750 P.2d 654 (1988). "The trial court has broad discretion in distributing the marital property, and its decision will be reversed only if there is a manifest abuse of discretion." In re Marriage of Rockwell, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). A manifest abuse of discretion occurs if the court exercised its discretion on untenable grounds. Id. at 243.

Here, it appears that the trial court attempted to distribute the community property equally, award the parties their separate property, and reimburse any "separate property interests" in the community property. But, as Don contends and Ann does not dispute, the court made several significant computational errors in carrying out this plan.

The trial court found that the Lagoon Point lot, valued at $52,500, was community property and awarded it to Ann. When dividing the property, the trial court miscalculated the total value of community property in Ann's favor by $52,500, the value of the Lagoon Point lot. As a result, the court erroneously added $52,500 to Don's community property equalization payment. In addition, the court ordered Don to reimburse Ann's $60,000 "separate property interest" in the lot, effectively tripling the asset's value.

Similarly, the court awarded the F350 truck to Don as community property with a depreciated value of $24,995. Ann then received $12,498 as her share of the value of the truck as part of the equalization payment. But, the court also ordered Don to

reimburse Ann for the full $27,000 payment she made with separate property, effectively creating an asset worth $39,493.

Given the court's apparently strict distribution plan, the computational errors had a significant effect on its valuation of the parties' total property and on Don's equalization payment. The court essentially created property that did not otherwise exist and then distributed it to Don's disadvantage. Cf. In re Marriage of White, 105 Wn. App. 545, 549, 20 P.3d 481 (2001) (court may only distribute assets that exist at the time of trial).

Don also contends that the trial court erred in characterizing the parties' premarriage real estate as community property. He correctly notes that the court failed to explain why it valued Ann's investment account at the time of trial, rather than at separation, as it did the parties' other property. Ann had sole control over the account and used it for living expenses during the separation.

In a dissolution proceeding, the findings of fact and conclusions of law must be sufficient "to suggest the factual basis for the ultimate conclusions." In re Marriage of Lawrence, 105 Wn. App. 683, 686, 20 P.3d 972 (2001); CR 52. Here, the trial court entered only cursory written findings of fact that identified the marital property and its character and the court's ultimate division of the property. The court did not explain the basis for its distribution plan or the related disparity in the property division. Nor did the court indicate how the statutory factors and any other relevant circumstances, including the economic circumstances of each spouse at the time of the dissolution, affected the property distribution. The court's oral decision sheds no light on why the

court reached its division. See id. (appellate court may consult oral decision to supplement inadequate written findings).

Without accurate and adequate findings, we are unable to review the trial court's exercise of discretion in distributing the marital property or whether the ultimate division was fair and equitable. We therefore remand for the correction of computational errors and the entry of findings articulating the court's basis for its distribution. See In re Marriage of Urbana, 147 Wn. App. 1, 13, 195 P.3d 959 (2008) (trial court abused its discretion by entering greatly disparate property division without providing reasons); Lawrence, 105 Wn. App. at 686 (remanding for the entry of findings of fact and conclusions of law explaining the basis of the trial court's custody award).

## II.  Motion for Clarification

After the trial court entered the dissolution order, Don filed a motion for clarification, erroneously claiming that the trial court had distributed the community property interest in his pension to Ann. The trial court denied the motion, finding that it was "not well grounded in fact," and awarded Ann $1,375 in attorney fees.

On appeal, Don concedes that the motion was based on a mistaken understanding of the court's decision. He nonetheless asks this court to reverse the attorney fee award, because the court made mistakes that Don did not mention in his motion.

Don cites no authority to support his argument. Nor has he presented any legal argument suggesting that the trial court's imposition of sanctions was erroneous or an abuse of discretion. We decline to consider the issue. See Saunders v. Lloyd's of

No. 76934-1-I/8

*London*, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court may decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

We remand for further proceedings consistent with this opinion.

_Appelwick, C.J._

WE CONCUR:

_Andrus, J._      _Schindler, J._

-8-