FILED
MAY 12, 2015
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 31724-2-III |
| RENE VERCOE (formerly MILLER), | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL D. MILLER, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — Rene Vercoe appeals the denial of her petition to modify the

spousal maintenance awarded her in the 2010 dissolution of her marriage to Michael

Miller. She contends that a superior court commissioner, and a judge on a motion for

revision, subjected her petition to the wrong legal standard, deprived her of a right to

discovery, and based the determination that no substantial change in circumstances

warranted modification on unsupported findings.

The judge concluded after reviewing the record and the commissioner's decision

that summary judgment dismissal of Ms. Vercoe's petition was appropriate, since she had

failed to present evidence of any genuine issue of fact that there had been a substantial change of circumstances from those existing at the time of the decree. We agree. And like the judge, we find no error in the commissioner's refusal to continue the hearing and compel discovery from Mr. Miller—the postdecree record was extensive, Ms. Vercoe did not make the showing required by CR 56(f), and there is no reason to believe that the evidence she sought would have changed the result. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 2008, Rene Vercoe and Michael Miller separated for the second time after 25 years of marriage. Following a lengthy trial, a decree of dissolution was entered in May 2010. Apart from the parties' home, household goods, and retirement plans, the decree's asset schedule and findings showed that the parties' remaining community assets were worth only $37,087 and that their current community liabilities—mostly credit card debt—were almost $60,000.

The parties' home was subject to a mortgage liability of approximately $625,000 at the time of the decree. It was already listed for sale and the decree required that it remain listed until sold. The decree further provided that either party could ask the court to review the asking price ($799,000, according to the decree) every 60 days and that "any issues relating to the sale" were returnable to the family law docket on short notice. Clerk's Papers (CP) at 4. Other materials filed by Ms. Vercoe indicated that even before the entry of the decree, Mr. Miller believed a $799,000 asking price was too high and had

2

only agreed to sign a listing agreement if the price was lowered to $729,000. Those materials indicated that the realtor was "doing everything humanly possible to market [the] property appropriately," but there is no evidence of any offers. CP at 149. The decree provided that upon the sale of the home, "[a]ny net proceeds" would be divided between the parties at closing. CP at 4. Until sold, Ms. Vercoe would have the exclusive right to occupy the home. *Id.*

The decree ordered Mr. Miller to pay 60 percent of Ms. Vercoe's attorney fees and costs, in the amount of $16,955.85; and, commencing March 1, 2012, that he make the monthly mortgage payments of $3,458.23, pay $1,360.56 a month in child support, and pay $3,000 a month in spousal maintenance for a period of three years. Until the family home was sold, Ms. Vercoe was required to contribute $1,000 a month toward the mortgage payment, which would be accounted for in the form of a discount from Mr. Miller's maintenance obligation to her, reducing his maintenance obligation to $2,000 a month as long as he was paying the mortgage.

The court's findings and conclusions included 36 findings explaining the court's decision to order three more years' spousal maintenance. It found that the parties were in very different economic circumstances at the time of the dissolution as a result of their different employment histories. Mr. Miller had enjoyed a steady career as a pilot: first in the Air Force, then in the Washington Air National Guard, and ultimately at Alaska Airlines, where he was a captain at the time of the decree. By contrast, Ms. Vercoe,

3

although a college graduate, had been employed in lower paying positions, peaking with annual earnings of $112,000 when she worked for a company that designed professional exchange programs. Her success in that position led her to start her own business, but it proved unsuccessful.

The court found that Mr. Miller's income "was significantly progressive," and that during the five years preceding the decree, his annual income averaged $140,000, although he had earned $168,456 in 2009. CP at 418. Ms. Vercoe's earnings, by contrast, had peaked at $112,000, but she had been unemployed in the three years before the marriage was dissolved. The court found that her only income in 2009 had been spousal maintenance paid by Mr. Miller under a temporary order, but that at the time of trial she had just become a licensed realtor.

Concluding that Mr. Miller was on "a good, solid track to continue his earnings" and that Ms. Vercoe "needs to have some assistance while she is in the training or developing stages of real estate or other marketing opportunities," the court stated that three years' maintenance was "appropriate to give [Ms. Vercoe] the stability and an income level to be able to devote time to career-building activities." CP at 418-19. It cautioned that the maintenance "is meant to be a short-lived burst for a great launch." CP at 419.

Following entry of the decree, Mr. Miller failed to make the required mortgage and credit card payments. According to him, it was because the credit card debts

4

assigned to him were in Ms. Vercoe's name, and creditors proved unwilling to accept a payment plan. He responded by making attempts to rent the couple's home for an amount that would cover the mortgage or to attempt to sell the home at a further reduced price—according to him, to avoid foreclosure. While he made the required child support payments, he paid Ms. Vercoe only $2,000 a month toward the spousal maintenance obligation.

In June 2010, Ms. Vercoe sought an order holding Mr. Miller in contempt. A court commissioner entered an order to show cause setting a hearing for July 12. In response, Mr. Miller filed for protection under Chapter 13 of the bankruptcy code on June 30, 2012.

Ms. Vercoe filed six claims as a creditor in Mr. Miller's bankruptcy proceeding. Three were disallowed. The following two were reportedly resolved expeditiously, by stipulation or by court order:

| Claim 5 | Unpaid attorney fees awarded by the dissolution decree, plus interest | Allowed as an unsecured claim in the amount of $17,217.85 |
|---------|------------------------------------------------------------------------|------------------------------------------------------------|
| Claim 6 | Unpaid credit card debt as to which Mr. Miller was required by the dissolution decree to hold Ms. Miller harmless | Allowed as an unsecured claim in the amount of $61,713.30 |

Ms. Vercoe's last creditor's claim—her claim "7"—sought $125,000 for damages allegedly suffered as a result of Mr. Miller's bankruptcy and the foreclosure of the family home, which she claimed damaged her credit rating and rendered her unable to find work. Mr. Miller deposed Ms. Vercoe in the bankruptcy proceeding to get a better understanding of the claim. She testified:

> A. ... I've been turned down by the Gates Foundation, by U.S. Bank, by Bank of America.
>
> Q. And did any of those three give you a letter or some written memo telling you why they turned you down?
>
> A. They told me that a more qualified candidate had been chosen for the position; thank you for your application.
>
> Q. Is that generally true of all three of those companies?
>
> A. Yes. That's generally true of all companies.
>
> Q. Okay.
>
> A. That's the standard letter.
>
> . . . .
>
> Q. (By Mr. Bury) I'll ask you the question again. Do you claim that Michael Miller was the cause of you not being hired by these entities?
>
> A. I claim that having my credit damaged by Mike Miller caused me to not look as good as some other applicants.
> Whether or not that was the reason I was not hired, I cannot tell you. However, there are a lot of businesses where I cannot even apply because I know that my credit will be checked.
>
> Q. None of these employers to whom you gave applications ever told you that something Michael Miller did was the cause of them not hiring you; is that true?

6

A. They do not tell me why they did not hire me.

Q. I thought they told you—in every case they told you that someone was more qualified?

A. That there was someone more qualified. They did not tell me what was wrong with me. They told me what they hired.

Q. Didn't they tell you that you didn't have the same qualifications as the applicant they chose?

A. They told me I didn't have better qualifications. And I'm assuming that your credit is a part of your qualifications.

CP at 59-60. Concluding that claim 7 was in the nature of a tort claim, the parties stipulated to transferring the claim to state court.

Ms. Vercoe and Mr. Miller thereafter reached an agreement under which she would receive an additional $15,500 for claim 7; the parties filed a stipulation that modified his earlier-proposed Chapter 13 Plan and settled all objections to the claims. Ms. Vercoe agreed to dismiss the state court complaint with prejudice, which she did. According to Mr. Miller, he settled the claim against his lawyer's advice but "figured the $15,500 would give Ms. Vercoe the money to cover any [attorney expense] she had incurred in the bankruptcy." CP at 22. A financial declaration filed by Ms. Vercoe in February 2013 indicated that she owed $15,000 to her bankruptcy lawyer.

Mr. Miller's final Chapter 13 Plan was a 100 percent repayment plan, which the bankruptcy court approved a few weeks later on April 25. Over the duration of the plan,

7

Ms. Vercoe has received or will receive a total of $94,431.15 on her three allowed claims.

In June 2012, two months after settling her claims against the bankruptcy estate, Ms. Vercoe filed the petition in this proceeding, asking the court to modify Mr. Miller's spousal maintenance obligation by extending it. As reasons for modifying the maintenance obligation, she alleged the following "substantial change in circumstances since the entry of the decree":

> The husband has filed a bankruptcy proceeding which has resulted in the foreclosure and loss of the shared residence and resulted in a reorganization of debts and liabilities among the parties. This has caused significant legal fees and related costs to the wife. Overall, this process, along with the resulting effects of the bankruptcy, have had a severe impact on the wife's stability and ability to equalize the economic position of the parties after a 27 year marriage. The wife has suffered additional hardship as a direct result of the husband's conduct after the entry of this decree causing a continued need for spousal maintenance.

CP at 14.

Mr. Miller filed a motion for summary judgment dismissing Ms. Vercoe's petition in October 2012. He argued that the petition could be dismissed on any of three grounds: res judicata based on the resolution of her bankruptcy claim 7; accord and satisfaction; or that there had been no substantial change in the parties' circumstances. He supported his motion with the transcript of the deposition of Ms. Vercoe taken in his Chapter 13 bankruptcy proceeding.

8

In December 2012, Ms. Vercoe, acting pro se, served a request for production on Mr. Miller seeking his banking, employment, housing, and legal expense records as well as paystubs of the woman with whom he is alleged to be living.

In February 2013, Ms. Vercoe, still acting pro se, filed a motion to compel discovery and a motion and declaration for a temporary order of maintenance on a family law form, along with a supporting brief. All told, by the end of February, Ms. Vercoe had filed 100 pages of declarations and attachments in connection with her request for modification.[1] When she set her motions to compel and for temporary maintenance for a March hearing, Mr. Miller's lawyer contacted her to insist that his motion for summary judgment be heard first. When she objected, Mr. Miller moved for a protective order under CR 26(c) and to stay Ms. Vercoe's motions.

A commissioner of the superior court heard Mr. Miller's motions on March 14. In the course of the hearing, the commissioner expressed puzzlement as to how the matter had proceeded, stating:

> [I]f there is a modification of spousal maintenance that would typically go on the modification docket. This went to a trial court for unbeknownst—reasons unbeknownst to me. Trial courts don't do modifications of orders like that. That is on a support modification docket. But . . . all of it stems from first is there a basis to dismiss the entire action. . . . And whether the

---

[1] She had filed a financial declaration in November 2012, a motion and declaration for a temporary order filed later in February, and an amended financial declaration filed later in February.

9

discovery is appropriate is determined by whether the case is appropriate to move forward.

CP at 383.

The commissioner granted Mr. Miller's motions, setting a hearing for March 28, and providing briefing deadlines to the parties. She stated, however, that she "[did not] want more declarations with regard to factual things," commenting that "I've already got I don't know how many pages of documents that I've already reviewed. I don't need another hundred that aren't going to help me." CP at 384.

On the deadline for Ms. Vercoe's briefing, Ms. Vercoe—now represented by counsel—filed a nine-page declaration of her own and a declaration of the lawyer who had represented her in Mr. Miller's Chapter 13 proceeding. The court commissioner notified the parties that she would not consider the declarations, continued the hearing to April 4, and gave Ms. Vercoe a new April 1 deadline for legal briefing. Ms. Vercoe filed a brief on April 1, but thereafter persuaded the commissioner to consider her declaration. Relenting, the commissioner told Ms. Vercoe's lawyer:

> Here's what I will do. I will consider Ms. Vercoe's declaration. I reviewed everything else in [the] file, some 200 pages, many declarations from your client because I have to sort of get tenor of what's going on underlying all of it. I think that would give me plenty of information.

CP at 385.

The commissioner heard argument of the motions on April 4. While she discussed the possibility of legal preclusion on res judicata or other grounds, she ultimately

10

dismissed the petition on the basis that there had been no substantial change of circumstances. She explained that a statutory change in circumstance is a change "which is significant and . . . unknown, unanticipated;" that it was not "*I want more because I need more.* But that something changed between the time that the first thing was negotiated and when you came back in to ask." CP at 388-89 (emphasis added).

The commissioner observed that the parties' unsustainable credit card debt and pressing need to sell the costly home was, as of the time of the dissolution decree, "already in place and so that is not a new circumstance." *Id.* at 389. She added:

> The damage to credit is also not new. Here's the deal. By the time you got to divorce both your credit was already damaged. It's clear in the documents. You were already struggling. You were already in over your head. You were already in on a house you couldn't afford. So that damage was a long time ago. And it might [have] gotten worse through the divorce, which is [sic] does with most families, but it doesn't—but that damage was already there.

*Id.*

The commissioner finally commented that another fact that remained unchanged and "is the piece . . . most important to me, [is] she's being paid for the debt through the bankruptcy. It was not pushed over to her as her responsibility without any relief. So yes, [Mr. Miller] was supposed to pay the debt" and because the plan approved was a 100 percent plan, "He's going to pay it. It's not going to be paid in exactly the way you might have anticipated, but it's still being paid." *Id.*

11

Based on this reasoning, the commissioner stated that "I don't think I need to go to summary judgment." *Id.* Instead,

> I can rule on this very clear and on the fact that there is not a significant and unintended or unanticipated change in circumstance. Where you were at before is where you are now.
>
> And so I'm going to dismiss the petition based on no significant change in circumstance and if, as I said before, if there's no pending petition, there is no basis for discovery. We don't allow people to go on fishing expeditions unless there's a pending petition.

*Id.* at 389-90.

Ms. Vercoe filed a motion to revise the commissioner's ruling. She argued that res judicata did not bar her claims, that questions of fact remained as to whether the bankruptcy constituted a substantial change in circumstances, and that the commissioner improperly limited her from presenting evidence.

The superior court judge who heard argument of the motion for revision commented that he was not sure what the commissioner had meant about not having to reach summary judgment. He questioned Mr. Miller's lawyer in particular about whether he thought the court commissioner granted summary judgment or something else. After hearing both parties' argument, the judge took the matter under advisement and thereafter issued a letter ruling. The judge stated that he had spent "three to four hours" reviewing the materials in the court file and noted that "over 89 documents have been filed in this dissolution since trial was completed in March of 2010." CP at 397. He found no basis to set aside the commissioner's order of dismissal. He also resolved any confusion about

the basis for dismissal by stating that the commissioner's dismissal, "essentially grants the same relief that would be provided had she directed full summary judgment on the Respondent's request." CP at 397.

Ms. Vercoe appeals.

## ANALYSIS

"Once the superior court makes a decision on revision, 'the appeal is from the superior court's decision, not the commissioner's.'" *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004) (quoting *State v. Hoffman*, 115 Wn. App. 91, 101, 60 P.3d 1261, *rev'd* 150 Wn.2d 536, 78 P.3d 1289 (2003)). Accordingly, it is the trial court's denial of Ms. Vercoe's motion for revision that we review on appeal. At issue is whether the court abused its discretionary authority by refusing to revise the commissioner's order dismissing Ms. Vercoe's modification petition. *In re Marriage of Dodd*, 120 Wn. App. 638, 644, 86 P.3d 801 (2004).

The revision court stands in the same position as this court. *Id.* at 643. It may, based upon an independent review of the record, re-determine both the facts and legal conclusions drawn from the facts. *Id.* at 645 (citing *In re Dependency of B.S.S.*, 56 Wn. App. 169, 171, 782 P.2d 1100 (1989)). It can, as the superior court did in this case, rule that summary judgment was appropriate even if the basis of the commissioner's reasoning is less clear.

13

Ms. Vercoe argues that revision should have been granted due to errors in the procedure followed as well as on the merits. We address the procedural challenges first.

### I.     Procedural challenges

Under RCW 26.09.170(1), the spousal maintenance provisions of the Miller/Vercoe decree may be modified "only upon a showing of substantial change of circumstances." The change must have been one "that was not within the contemplation of the parties at the time the decree was entered." *In re Marriage of Ochsner*, 47 Wn. App. 520, 524, 736 P.2d 292 (1987) (citing *Wagner v. Wagner*, 95 Wn.2d 94, 98, 621 P.2d 1279 (1980)). "The phrase 'change in circumstances' refers to the financial ability of the obligor spouse to pay vis-à-vis the necessities of the other spouse." *Id.* at 524 (quoting *Bartow v. Bartow*, 12 Wn.2d 408, 121 P.2d 962 (1942)). "If the evidence does not establish that a material change of circumstances has occurred, the court must deny the request for modification." 20 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 35.19 (2013); *Bartow v. Bartow*, 170 Wash. 409, 412 (1932) ("In no event will such a modification be made without proof of a substantial change in the condition of the parties.") (quoting 19 C. J., DIVORCE, § 619, at 274).

### *Assignments of error 1 and 4: summary judgment*

Ms. Vercoe's first and fourth assignments of error relate to alleged deviations from proper summary judgment procedure: she argues that the commissioner erred by

treating the motion to dismiss under CR 12(b)(6) in certain respects while treating it as a motion under CR 56 in others, and that the commissioner failed to view the facts in the light most favorable to her, as the non-moving party.

Mr. Miller's October 2012 motion for summary judgment was an atypical response to a petition to modify spousal maintenance. Such petitions are ordinarily resolved in a single hearing based on declarations, and it is not clear to us whether the court commissioner viewed herself as dismissing the petition on the basis of summary judgment or based on weighing the evidence presented by the declarations.[2] In declining to revise the commissioner's decision, however, the superior court judge recognized that Mr. Miller had asked for summary judgment and that the commissioner's dismissal "essentially grants the same relief that would be provided had she directed full summary

---

[2] Spokane County local rules contemplate that the party seeking a modification of spousal maintenance will file a financial declaration with her or his petition. LSPR 94.04(f)(6). If a hearing is required, it is to be set "according to procedures used for child support modifications." *Id.* "The matter will be heard on declarations only unless a party obtains an order permitting oral testimony." *Id.* The hearing setting procedure for child support modifications that is incorporated by LSPR 94.04(f)(6) appears at LSPR 94.04(f)(5), and provides in relevant part that "[t]he case shall be set for a hearing on declarations only," unless a motion and affidavit are filed for oral testimony.

As a result, whether the commissioner ultimately determines a petition for modification based on a controlling issue of law or by weighing the facts, the hearing process is the same: there ordinarily is no trial. The commissioner might have viewed the petition as before her for resolution on either a legal or a factual basis. Our review is of the superior court's conclusion that the commissioner's decision was supportable as a matter of summary judgment, however.

judgment on the Respondent's request." CP at 406. Since the judge viewed summary judgment as appropriate, that is what we review.

Ms. Vercoe argues in support of her first assignment of error:

> The court Commissioner initially treated the Motion to Dismiss as a motion calling for a 'legal' determination. This would tend to indicate that she was operating under CR 12(b)(6).

Br. of Appellant at 9. Since we are reviewing the judge's decision, a challenge to reasoning by the commissioner that was not adopted by the judge is not before us. But in any event, we disagree. Summary judgment motions, like motions under Rule 12, call for legal determinations. *See* CR 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). While the commissioner expressed the view that no further declarations were needed, that appears to have been based on her conclusion, after reviewing the court file, that Ms. Vercoe had "just dumped information into this file in a manner that is not helpful to anyone." CP at 385. The commissioner never mentioned CR 12(b)(6) nor, in explaining her decision, did she ever speak in terms of the standard under that rule. Ms. Vercoe offers literally no support for her argument that the commissioner analyzed the petition under CR 12(b)(6).

Ms. Vercoe's fourth assignment of error is that the trial court erred by viewing the facts in the light most favorable to Mr. Miller, the moving party. She bases this on the

16

trial court's discussion of the parties' debt management and credit problems at the time of the decree, which would only worsen with divorce. Ms. Vercoe argues that "[t]here is nothing in the record that suggests that the parties could not afford the home they were living in . . . [or] to suggest that the parties were 'in over their head.' Quite the opposite." Br. of Appellant at 46.

In considering a motion for summary judgment, the court views the facts and all *reasonable* inferences therefrom in the light most favorable to the non-moving party. *Marshall v. AC & S Inc.*, 56 Wn. App. 181, 184, 782 P.2d 1107 (1989). "A summary judgment motion will not be denied on the basis of an *unreasonable* inference." *Id.* (citing *Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 47, 747 P.2d 1124 (1987) (emphasis added). The financial situation of these parties at the time of the decree is factual and undisputed. When Ms. Vercoe argues that there are two different ways to view her and Mr. Miller's situation, she is necessarily talking about inferences to be drawn from those facts. The commissioner rightly viewed there being only one *reasonable* inference.

The asset schedule attached to the decree revealed that the parties, who had been married for 25 years at the time of their 2008 separation, with both employed at many times during that period, had almost $60,000 in credit card debt, yet had accumulated only $37,000 in non-retirement, non-home equity assets. Their home equity situation appeared dire: they had $625,000 in debt against the home; before entry of the decree, Mr. Miller had demanded that the listing price be reduced to $729,000. There is no

17

evidence that the parties received any offers even at the $729,000 asking price. It was understandable that the decree contained extraordinary provisions for court supervision with a view to sale as quickly as possible. Net of paying a customary real estate commission, a sale of the home—if one occurred—would not produce enough to solve their looming cash flow problems.

Mr. Miller was required by the decree to begin paying a total of $6,818.79 towards Ms. Vercoe's and their children's housing and expenses ($3,458.23 mortgage + $1,360.56 child support + $2,000.00 maintenance net of credit for a portion of the mortgage). The decree recognized that Mr. Miller would be obtaining housing of his own in Bellevue, his new work base, and he did thereafter at a cost of $2,350/month. Assuming Mr. Miller could live in Bellevue on the same $3,000/month non-housing expense rate that Ms. Vercoe was receiving while living in Spokane, his own housing and expenses would be $5,350/month. Combined with the expenses he was paying to and for Ms. Vercoe and their children adds up to $12,168.79/month, or $146,025.48 a year. Out-of-pocket expenses of $146,025.48 a year is materially more than Mr. Miller would net after federal income tax on his annual income contemplated by the decree. Add to that the fact that Mr. Miller had been ordered to pay 60 percent of his wife's attorney fees and all of the credit card debt, for a combined total of about $75,000.

The commissioner did not run through these calculations on the record, but she did not have to do the math to discern that even viewed in the light most favorable to Ms.

Vercoe, Mr. Miller was unlikely to be able to meet all of the financial obligations imposed on him in a timely manner. Because he did not have the cash flow to meet all of the obligations, it was foreseeable that Ms. Vercoe—the applicant for the parties' credit cards—would take a credit rating hit.

A trial court weighing summary judgment is never required to view undisputed evidence unrealistically. The commissioner's realistic assessment of evidence of the parties' financial condition at the time of the decree was proper under CR 56.

*Assignments of error 2 and 3: presenting evidence and discovery*

Ms. Vercoe's second assignment of error is that the commissioner did not allow her to present evidence. Yet apart from the issue of discovery (addressed next), no limitation was placed on her right to present evidence. In the ten months between the time she filed the petition and the hearing, Ms. Vercoe filed a great deal of evidence— over a hundred pages' worth of declarations and supporting exhibits. The commissioner reviewed it all. Even Ms. Vercoe's last declaration, which the commissioner originally rejected, was ultimately considered.

As to the issue of discovery, Ms. Vercoe did not serve her requests for production until after Mr. Miller's summary judgment had been filed. Her request that the summary judgment await responses to her discovery therefore fell within the ambit of CR 56(f), as Ms. Vercoe recognizes. She argues that she should have been allowed time to complete discovery under that rule.

19

CR 56(f) provides that, "[s]hould it appear from the affidavits of a party opposing the motion [for summary judgment] that for reasons stated, [he] cannot present by affidavit facts *essential to justify* [*his*] *opposition*, the court may . . . order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." (Emphasis added.) We review a trial court's application of CR 56(f) for abuse of discretion. *Colwell v. Holy Family Hosp.*, 104 Wn. App. 606, 613, 15 P.3d 210 (2001).

"A continuance is not justified if the party fails to support the request with an explanation of the evidence to be obtained through additional discovery." *Molsness v. City of Walla Walla*, 84 Wn. App. 393, 400-01, 928 P.2d 1108 (1996). Ms. Vercoe failed to explain why the seven items of financial information she requested from Mr. Miller were essential to justify her opposition to his summary judgment motion. Her failure to make the required showing is a sufficient basis for rejecting this assignment of error.

We add, however, that the "substantial change of circumstances" alleged by Ms. Vercoe's petition was that Mr. Miller's filing of bankruptcy "has caused significant legal fees and related costs to the wife," and "had a severe impact on the wife's stability and ability to equalize the economic position of the parties." CP at 14. Since the substantial change of circumstances alleged by the petition is a change in *Ms. Vercoe's*

circumstances, additional detail about her husband's circumstances would not be essential to justify her opposition to Mr. Miller's motion.[3]

Finally, most of the volume of information sought by Ms. Vercoe's discovery requests to Mr. Miller was records of bank and retirement account transactions beginning on January 1, 2003. The parties' decree of dissolution was entered on May 14, 2010.

> [W]here the provisions of a decree are fully litigated by the parties the decree is final and res judicata as to issues determined on conditions then existing. The decree remains res judicata unless and until a material change in the circumstances of the parties justifies its modification in the interest of the welfare of the children. This is so that the courts may not be taken over by one set of litigants for the continued readjudication and reconsideration of their affairs.

*Collins v. Collins*, 12 Wn. App. 850, 852-53, 532 P.2d 1185 (1975) (emphasis omitted).

"Events prior to the entry of the last order or decree are generally irrelevant because the question is what has changed since that time." 20 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 35.19 (2013). Where a trial court excludes evidence in a proceeding to modify support "because it is a mere reiteration of the evidence at the divorce trial," the appellate court "will be slow to disturb its ruling." *Brim v. Struthers*, 44 Wn.2d 833, 836, 271 P.2d 441 (1954). "This is

---

[3] The trial court had contemplated that Mr. Miller's income would continue to increase, so even if it did, it would be unlikely to constitute a substantial change in circumstances. *See* CP at 418-19 (stating that Mr. Miller's income had remained "significantly progressive" over the years, and continued to reflect the same "pattern of earnings progression").

also true regarding evidence which could and should have been offered at the previous trial." *Id.* at 836.

Ms. Vercoe failed to demonstrate that any of the discovery she requested from Mr. Miller was essential to her opposition to summary judgment as required by CR 56(f).

## II. Challenge to summary judgment dismissal

We turn to the merits. An action is properly dismissed on summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). "In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom most favorably for the nonmoving party." *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). Summary judgment is appropriate "only if, from all the evidence, a reasonable person could reach only one conclusion." *Folsom*, 135 Wn.2d at 663.

"[T]he moving party bears the initial burden of showing the absence of an issue of material fact." *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Where, as here, the moving party is a defendant and meets this initial showing, then "the inquiry shifts to the party with the burden of proof at trial, the plaintiff. If, at this point, the plaintiff 'fails to make a showing sufficient to establish the existence of an

22

element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).

*Res judicata*

Mr. Miller's principal argument below and on appeal is that the stipulated judgment that the bankruptcy court entered resolving Ms. Vercoe's claim 7 operates as res judicata to preclude her petition for modification.

Res judicata, or claim preclusion, is an affirmative defense that bars relitigation of claims and issues that were litigated, or could have been litigated, in a prior action. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995). The purpose of the doctrine is "to prevent piecemeal litigation and ensure the finality of judgments." *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005). For res judicata to apply, there must have been a final judgment on the merits in a prior action. *Pederson v. Potter*, 103 Wn. App. 62, 67, 11 P.3d 833 (2000). The subsequent action must also be identical with the first action with respect to "(1) persons and parties, (2) cause of action, (3) subject matter, and (4) the quality of the persons for or against whom the claim is made." *Spokane Research & Def. Fund*, 155 Wn.2d at 99.

The clearest statement of Ms. Vercoe's claim 7 in our record is in the allegations of the complaint she filed in superior court. Her complaint alleged that Mr. Miller "had the ability to comply with the decree of dissolution, and chose to file bankruptcy as a

means to cause harm to his ex-spouse," and then recited injury in the form of "lost equity in the home, damage to her credit rating, and attorney fees and court costs in protecting herself." CP at 260. Thus stated, her creditor's claim sounds like the "prima facie tort," which has never been recognized in Washington. *Cf. Pleas v. City of Seattle*, 112 Wn.2d 794, 802, 774 P.2d 1158 (1989) (discussing concerns over the "prima facie tort" approach in discussing changes in the second *Restatement of Torts*); W.E. Shipley, *Comment note—Prima Facie Tort*, 16 A.L.R.3d 1191 (1967) (citing cases from jurisdictions that recognize the tort, and which does not include Washington). Thus stated, her creditor's claim does not rely on the elements that must be shown to obtain modification of spousal maintenance.

Basic structural differences also distinguish petitions for modification from a claim that could be pursued in a bankruptcy court. Modification petitions address only the right to support "accruing subsequent to the petition for modification." RCW 26.09.170(1)(a). Claims resolved in a bankruptcy proceeding, by contrast, are determined "as of the date of the filing of the petition," and are therefore retrospective. 11 U.S.C. § 502(b). And the issue considered in a modification proceeding—whether a change in the parties' economic circumstances from those contemplated at the time of the decree warrants adjustment in ongoing financial support—is not one that is litigated in bankruptcy proceedings. *See, e.g., Coakley v. Coakley*, 400 N.W.2d 436, 442 (Minn. Ct. App. 1987) (husband's bankruptcy discharge did not have res judicata effect of barring

24

wife from raising claim for unpaid mortgage payments, as issue of his obligation to provide additional support by paying mortgage was never litigated by bankruptcy court).[4] The bankruptcy code itself recognizes this distinction. *See, e.g.*, 11 U.S.C. § 362(a), (b) (while filing of a bankruptcy petition stays most collection actions against the debtor, this stay does not apply to the establishment, modification, or enforcement of domestic support obligations).

Insofar as Ms. Vercoe argues that unexpected consequences of Mr. Miller's bankruptcy are a factor giving rise to her need for increased spousal maintenance, the fact that she received $15,500 to compensate her for those consequences is relevant evidence in deciding whether modification should be ordered. But the bankruptcy and family law claims and remedies are different and res judicata does not apply.

*Bankruptcy as giving rise to substantially changed circumstances*

Ms. Vercoe argues that "bankruptcy by itself can justify the modification of a Decree of Dissolution," citing this court's decision in *In re Marriage of Myers*, 54 Wn. App. 233, 773 P.2d 118 (1989). Br. of Appellant at 41. She misreads *Myers*. It holds, instead, that a superior court may properly consider the *consequences* of a bankruptcy in

_____

[4] *See also Eckert v. Eckert*, 144 Wis.2d 770, 775, 424 N.W.2d 759 (1988) (that husband's "finances had been earlier subject to the jurisdiction of the bankruptcy court did not prevent the [family] court from considering the parties' present circumstances and modifying maintenance to meet changed circumstances").

determining whether there has been a substantial change of circumstances justifying a modification of spousal maintenance.

The dissolution decree in *Myers* required Mr. Myers to pay and hold his ex-wife harmless from $17,130 of community debt. *Id.* at 234. Within a year of the decree, Mr. Myers filed for Chapter 7 bankruptcy and obtained a discharge from liability for the debt; the creditors then began pursuing Ms. Myers for collection, including by repossessing her car. She moved for an increase in spousal maintenance, which the trial court granted, finding a substantial change in circumstances in Mr. Myers' "discharge from substantial debts, his increased income from his employment, and his remarriage to a wife who has income to contribute to the community and the needs of the community." *Id.* at 235.

Mr. Myers argued on appeal that for the superior court to reimpose a debt discharged in bankruptcy was contrary to the bankruptcy code and would violate the Supremacy Clause. This court agreed that no Washington court could reinstate Mr. Myers' primary liability for the $17,130 debt after its discharge in bankruptcy, but it held that the trial court could surely recognize the $34,000 swing in the parties' contemplated financial situations and consider whether it warranted an adjustment in the amount being paid to Ms. Myers as spousal maintenance. For purposes of a request for modification, the bankruptcy proceeding could be considered as "a factor changing the financial circumstances of the parties." *Id.* at 239.

26

So too here: bankruptcy could be a factor, if and to the extent that it substantially changes the financial circumstances of the parties.

The court commissioner correctly observed that Mr. Miller's bankruptcy is not a factor for these parties in the way that Mr. Myers' bankruptcy was for his ex-wife. Ms. Vercoe's claim for the amount of the parties' community credit card debt was honored in the bankruptcy proceeding and either has been, or will be, paid. Mr. Miller was not relieved of the amount of the liability; it merely changed in form. Unlike in *Myers*, there was no wholesale shift in liability. There was only a change in the time and manner in which Mr. Miller would pay.

> *Ms. Vercoe has failed to meet her burden of demonstrating a*
> *genuine issue as to substantially changed circumstances.*

We turn, finally, to Ms. Vercoe's challenge to the commissioner's determination that she failed to present evidence of a substantial change in circumstances, and the superior court's decision that, for that reason, the dismissal of her petition was warranted on summary judgment grounds.

When a spouse "has the ability to earn a living, it is not the policy of the law" to give that spouse a perpetual lien on their former spouse's future income. *Morgan v. Morgan*, 59 Wn.2d 639, 642-43, 369 P.2d 516 (1962); *see also Murray v. Murray*, 26 Wn.2d 370, 378, 174 P.2d 296 (1946). Here, Ms. Vercoe received temporary support during the pendency of the dissolution, during which she obtained her realtors' license; in

entering the decree, the trial court ordered another three years' maintenance as a further "short-lived burst." CP at 419.

Ms. Vercoe devotes the last section of her opening brief to a belated effort to identify genuine issues of fact. But notably absent are citations to evidence in the record setting forth the "specific facts" that create a genuine issue for trial. *Young*, 112 Wn.2d at 225-26.

Ms. Vercoe contends that Mr. Miller's non-compliance with the decree and his bankruptcy were unanticipated circumstances. But the unanticipated "change in circumstances" required for modification "refers to the financial ability of the obligor spouse to pay vis-à-vis the necessities of the other spouse." *Marriage of Ochsner*, 47 Wn. App. at 524. Ms. Vercoe needs to show the parties' changed and unanticipated financial circumstances as of the time of her petition, not merely that something unexpected happened after entry of the decree.

She argues that Mr. Miller's expenses dropped unforeseeably as a result of the foreclosure of the home and his relief from having to pay the credit card debt. But the trial court foresaw Mr. Miller being relieved of the house payment, since the decree contemplated an earnest effort to sell the home. And Mr. Miller's relief from liability to the credit card companies went hand-in-hand with his recognizing the equivalent creditor's claim from Ms. Vercoe. No substantially changed financial circumstances are shown here.

28

Ms. Vercoe suggests that equity in the parties' home was unforeseeably lost as a result of the foreclosure. But the trial court had no idea whether the home could be sold, or sold profitably. While the plan was to sell the home and sell it soon, the decree explicitly provided that "any" net sale proceeds would be divided between the parties at closing. CP at 4. Notably, Ms. Vercoe has presented no evidence that the home could have been sold profitably within a feasible period of time—she offers no evidence, for example, that the home was resold easily, or for an attractive price, after the foreclosure.

Ms. Vercoe contends that she incurred substantial attorney fees in the unanticipated bankruptcy. But the only evidence in the record is that she incurred $15,000 in fees in the bankruptcy and that the bankruptcy honored her claim 7 in the amount of $15,500—according to Mr. Miller, to cover her fees. Having failed to demonstrate other loss arising from the bankruptcy, this evidence does not demonstrate substantially changed financial circumstances.

She suggests that her debt burden was increased on account of interest, collection costs, and attorney fees she might owe on the credit card debt. Literally no evidence was presented on this score.

Ms. Vercoe suggests that the trial court did not anticipate Mr. Miller's income to increase or Ms. Vercoe's credit rating to suffer. But neither of these circumstances was unanticipated or a substantial change in circumstances. While the trial court could not

29

have known at the time of the decree that these things would happen, both were foreseeable.

Finally, she contends that the trial court anticipated that her income would have stabilized. It is more accurate to say that the trial court anticipated that three years would be a sufficient time within which Ms. Vercoe *could* stabilize her income. To obtain a modification in the decree, it was incumbent upon Ms. Vercoe to present *facts* suggesting she was unable to stabilize her income earlier because of unanticipated and changed circumstances. Instead, her voluminous materials filed with the court provide only conclusory claims and explanations, including her entirely unsubstantiated speculation that her poor credit rating is the reason she was turned down for many positions.

Ms. Vercoe was not entitled to rely on "speculation, argumentative assertions that unresolved factual issues remain, or in having [her] affidavits considered at face value." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). But that is precisely what she has presented. The trial court properly found that summary judgment dismissal was appropriate.[5]

---

[5] Mr. Miller relies on only res judicata and Ms. Vercoe's asserted failure to show a substantial change in circumstances as bases on which summary judgment was properly granted. He has abandoned accord and satisfaction as an alternative basis.

### *III. Attorney fees*

Mr. Miller requests attorney fees on appeal under RCW 4.84.185, CR 11, and RAP 18.9(a) for defending against a frivolous appeal. RAP 18.9(a) authorizes an award of terms or compensatory damages against a party who uses the appellate rules "for the purposes of delay, files a frivolous appeal, or fails to comply with [the] rules." In determining whether an appeal is frivolous, and therefore brought for the purpose of delay, courts are guided by the following principles:

> (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Green River Cmty. Coll., Dist. No. 10 v. Higher Educ. Pers. Bd.*, 107 Wn.2d 427, 442-43, 730 P.2d 653 (1986) (quoting *Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980)). "Raising at least one debatable issue precludes finding that the appeal as a whole is frivolous." *Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010).

Applying these standards, and assuming without deciding that RCW 4.84.185 and CR 11 are a basis for attorney fees on appeal based on similar standards, we deny the request for fees. Given the unusual procedural posture of the case and the res judicata

argument, we do not regard the appeal as "so totally devoid of merit as to be frivolous."

*Advocates for Responsible Dev.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, C.J.

WE CONCUR:

Brown, J.

Fearing, J.

32